# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA MIDDLE DIVISION

| | |
|---|---|
| MELANIE ZINN, | ) |
| PLAINTIFF, | ) ) ) |
| | ) Case No.: |
| V. | ) ) |
| VANTAGE MANAGEMENT LLC, | ) JURY TRIAL DEMANDED |
| | ) |
| DEFENDANT(S). | ) ) |

## COMPLAINT

### JURISDICTION

1. This action for injunctive relief and damages is brought under 28 U.S.C. §§ 1331, 1343(4), 2201, 2202, 29 U.S.C. § 2617(a)(2), The Family and Medical Leave Act. The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights caused by the Defendant.

2. This is a suit authorized and instituted under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., (ADA).

3. This suit is authorized and instituted under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. District Court jurisdiction exists under 29 U.S.C. §§ 215(a)(3) and 217.

4. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last

discriminatory act (Exhibit A). Plaintiff further sued within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

**PARTIES**

5. Plaintiff, Melanie Zinn, ("Plaintiff" or "Zinn") is a resident of Rainsville, Dekalb County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama during the events of this case. Thus, under 28 U.S.C. § 1391(b), venue for this action lies in the Middle Division.

6. Plaintiff was an employee within the contemplation of 29 U.S.C. § 203(e)(1).

7. Plaintiff worked over 1250 hours in the year before she asked for time off to attend doctor's appointments and to care for her own illness.

8. At all times relevant to this Complaint Plaintiff was engaged in interstate commerce.

9. Defendant Vantage Management LLC ("Defendant") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama. It is subject to service of process in Alabama.

10. Defendant employed at least fifteen (15) people during the current or preceding calendar year.

11. Defendant employed at least fifty (50) people for each working day during each of 20 or more calendar workweeks in the current or preceding calendar

year. Defendant employed these fifty (50) employees within 75 miles of Plaintiff's worksite.

12. Defendant is engaged in commerce from the production of goods as contemplated by 29 U.S.C. §§ 203(r), 203(s).

13. During the three years preceding filing this Complaint, Defendant was an enterprise engaged in commerce or the production of goods in commerce as defined by 29 U.S.C. 203(s)(1).

14. During the three years preceding filing this Complaint, Defendant has been a company whose employees, including the Plaintiff, are engaged in interstate commerce and whose employees handle and/or work on goods moved in and/or produced in commerce.

15. Defendant's gross annual revenue exceeds $500,000.

16. Defendant was an employer of Plaintiff as defined by 29 U.S.C. § 203(d).

## FACTS

17. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

18. Melanie Zinn began her employment with defendant on or about May 4, 2015, as a Compliance Auditor.

19. Defendant terminated Zinn's employment on or about November 5, 2018.

20. As a Compliance Auditor, Plaintiff reviewed rental applications to determine if they were complete and the files met the minimum eligibility requirements as set out in the government's eligibility guide.

21. Plaintiff's duties including looking at the files turned in by potential renters to verify all necessary forms were included and indicating so on a form.

22. Plaintiff's duties also included looking at the income on the applications to determine if the income met or exceeded the standard set forth by the government.

23. Plaintiff had no discretion about the audits she conducted. Her job was only to follow guidelines set by others to determine if the criteria were met.

24. Plaintiff had no management authority over other employees.

25. Plaintiff had no authority to bind the company on matters of significance.

26. Defendant does not maintain a timecard system for its auditors.

27. Defendant does not monitor how many hours it takes its auditors to complete its work each day.

28. At one time, when the minimum pay rate for overtime was being proposed, Defendant piloted a program by which the auditors would clock in,

however the company instructed the staff to clock out at 40 hours even if they actually worked more than the allotted time.

29. After the proposed overtime rule was scuttled, Defendant stopped the use of the time clock, and stopped tracking their hours.

30. Plaintiff routinely worked at least five hours of overtime per week.

31. Plaintiff is a person with one or more disabilities, including Diabetes that substantially limit one or more major life activities including: eating, sleeping, and thinking, among others.

32. Zinn can perform the essential functions of her job as an auditor with or without accommodation for her disabilities.

33. Plaintiff had no negative performance appraisals while she worked for Vantage.

34. Just months before Vantage ended Zinn's employment she was praised for the quality of her work and given a large performance-based raise.

35. Vantage never wrote Zinn up for her conduct while she worked there.

36. Zinn disclosed her disabilities to Zack Plumstead, her supervisor in late 2016 when she needed accommodation for her disability, to work from home for five consecutive working days.

37. Plumstead did not object to the accommodation.

38. In September 2018, Zinn experienced increased symptoms of her diabetes and gastrointestinal problems.

39. Zinn told Plumstead she was having problems and asked to work from home.

40. Plaintiff also asked for a flexible schedule so she could have time off to attend medical testing related to her increased symptoms and to adjust to the effects of new medications.

41. Plumstead initially said that Zinn could have the flexibility she needed to accommodate the medical testing and treatment related to her disabilities.

42. Plumstead did not, however, offer FMLA to take time off for her medical testing.

43. Vantage assigns its auditors a list of files to complete each day.

44. Once the auditor completes the list of files assigned, he or she is done working for the day.

45. As the auditors complete the audits, they delete them from the assignment spreadsheet.

46. After Zinn asked for an accommodation, she could no longer finish her day when her work was completed.

47. Instead, Christina Dupree would assign Zinn additional cases from other auditors to increase her workload.

48. To keep up with the workload, Zinn worked early mornings or late nights to complete the assignments.

49. This added workload forced Zinn to complete her assignments in the early morning hours so Zinn would have time to travel to her doctor's appointments.

50. Other auditors who completed their work were not given more work.

51. Even though Zinn was seeking more flexibility and the ability to go to doctor's appointments, Defendant gave her even more work than her co-workers without disabilities.

52. Zinn complained about getting increased work after she asked for additional flexibility at an auditor meeting.

53. Zinn complained to Zack Plumstead and Christina Dupree that she did not believe it was fair to give her additional work when she had asked for temporary accommodation, a more flexible schedule, so she could take time off to have testing related to her disabilities.

54. Since Dupree continued to assign her additional work, Zinn changed her practice to leave the files on the spreadsheet and notate progress so the company could tell she had completed the day's assigned tasks before the regular workday and was not idle.

55. Explaining that she had completed her work had no effect. Dupree continued to add more work.

56. Because Vantage increased her workload, Zinn missed medical appointments related to her disabilities.

57. On or about October 29, 2018, Dupree sent out an email to all the auditors saying they could not leave the files on their spreadsheets.

58. The next day, Zinn responded that Zinn had been leaving the files on the spreadsheet to prove that Zinn had completed a full day's work.

59. On or about October 30, 2018, Zinn emailed to Plumstead and Dupree complaining that the practice of increasing her workload was causing her to miss doctor's appointments.

60. Neither responded until Plumstead told Plaintiff they would discuss it on Monday, November 5, 2018.

61. On Monday November 5, 2018, Plumstead called Zinn into a meeting and told her that "it just isn't working out," and ended her employment.

62. Plumstead told Zinn she had done nothing wrong and that her performance was not an issue but asked her to sign a document that indicated that she had poor performance.

63. Plaintiff refused citing the language about her performance.

64. Plumstead said that the document was just a form.

65. Defendant replaced Zinn with a person without a disability and who had not sought time off that would have been covered by the FMLA.

## COUNT ONE – ADA – FAILURE TO ACCOMMODATE

66. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

67. Plaintiff suffers from a physical impairment, Diabetes.

68. Plaintiff's Diabetes affect her such that the major life activities of eating and endocrine function are significantly restricted as compared to the average person in the general population.

69. Plaintiff required the reasonable accommodation of temporary schedule flexibility and working from home.

70. Plaintiff requested that Defendant provide a reasonable accommodation.

71. Plaintiff performed the essential functions of her job with without accommodation for her disability.

72. Defendant failed to engage in the interactive process required by the Americans with Disabilities Act even though Plaintiff performed the essential functions of her job.

73. Because of Defendant's violation of the ADA, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## COUNT TWO - ADA - TERMINATION

74. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

75. Plaintiff suffers from the physical impairment of Diabetes.

76. Defendant knew Plaintiff's disability.

77. Plaintiff's Diabetes affects her such that the major life activities of eating and endocrine function are significantly restricted as compared to the average person in the general population.

78. Plaintiff performed the essential functions of her job with or without accommodation for her disability.

79. At all times relevant to this complaint, Plaintiff performed the essential functions of her duties as Compliance Auditor in a satisfactory or better manner.

80. On or about November 5, 2018, Defendant terminated Plaintiff's employment, saying "it just wasn't working out."

81. There is no logical, medical or other basis to believe that Plaintiff's disability would prevent Plaintiff from performing the essential functions of the job.

82. But for Plaintiff's disability, Defendant would have retained Plaintiff in her position as a Compliance Auditor.

83. Defendant violated the ADA by terminating her employment because of her disability.

84. Because of Defendant's violation of the ADA, Plaintiff has been damaged, suffering loss of pay, benefits and mental anguish.

## COUNT THREE – ADA – RETALIATION

85. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

86. Plaintiff was qualified for her position and able to perform the essential functions of the job.

87. On or about September 2018, Plaintiff engaged in protected activity, when she requested an accommodation for her disability, schedule flexibility and working from home.

88. On or about November 5, 2018, Zack Plumstead terminated Plaintiff's employment.

89. But for Plaintiff's protected activity, Defendant would have retained Plaintiff in his position as a Compliance Auditor.

90. Defendant violated the ADA by terminating Plaintiff for engaging in protected activity.

91. Because of Defendant's violation of the ADA, Plaintiff has been damaged suffering loss of pay, benefits, and mental anguish.

## COUNT FOUR - FMLA INTERFERENCE

92. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

93. During the 12-month period before , Defendant employed Plaintiff for at least 1,250 hours of service.

94. Defendant employed fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year of Plaintiff's termination, health issues related to diabetes.

95. During the week of September 7, 2018, Defendant employed fifty or more employees, worked within 75 miles of the location where Plaintiff worked.

96. In September 2018, Plaintiff provided notice of the need for FMLA leave to Zack Plumstead.

97. Plaintiff provided notice of her need of FMLA leave within a reasonable time after the need for FMLA leave arose.

98. Before September 2018, Plaintiff had never informed Defendant of the need for FMLA leave.

99. Defendant failed to provide Plaintiff with a Notice of Eligibility and Rights and Responsibilities form.

100. Defendant failed to provide Plaintiff with an FMLA Designation Notice form.

101. Defendant failed to provide Plaintiff with an FMLA Certification of Health Care Provider for Employee's Serious Health Condition form OR FMLA Certification of Health Care Provider for Family Member's Serious Health Condition form.

102. Defendant interfered with Plaintiff's FMLA rights by not allowing her to take leave.

103. On November 5, 2018, Defendant terminated Plaintiff's employment without justification.

104. Defendant's employees knew that Plaintiff suffered from FMLA qualifying conditions for which she needed treatment through her doctor.

105. Because of Defendant's willful interference with Plaintiff's rights under the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

**COUNT FIVE – FMLA – RETALIATION**

106. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

107. During the 12-month period before Defendant terminated Plaintiff's employment , Defendant employed Plaintiff for at least 1,250 hours of service.

108. Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year before .

109. During September 2018, Defendant employed fifty or more employees, worked within 75 miles of the location where Plaintiff worked.

110. In September 2018, Plaintiff provided notice of her need for FMLA leave to Zack Plumstead.

111. Plaintiff provided notice of her need of FMLA leave as soon as practicable due to her increase in symptoms.

112. Before September 2018, Plaintiff had never informed Defendant of a need for FMLA leave.

113. Defendant willfully failed to provide Plaintiff with a Notice of Eligibility and Rights and Responsibilities form.

114. Defendant willfully failed to provide Plaintiff with an FMLA Designation Notice form.

115. Defendant willfully failed to provide Plaintiff with an FMLA Certification of Health Care Provider for Employee's Serious Health Condition form.

116. Defendant terminated Plaintiff's employment on November 5, 2018.

117. Defendant's employees knew that Plaintiff suffered from FMLA qualifying conditions for which he/she needed treatment through her doctor beginning in September 2018.

118. Defendant's employee, Zack Plumstead, terminated Plaintiff's employment.

119. Plumstead terminated Plaintiff's employment, in whole or part, because of Plaintiff's exercise of FMLA rights.

120. Because of Defendant's retaliatory termination decision in violation of the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

**COUNT SIX – FLSA - OVERTIME**

121. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

122. During the three years preceding filing this Complaint, Defendant is an enterprise engaged in commerce or the production of goods in commerce as defined by 29 U.S.C. 203(s)(1).

123. During the three years preceding filing this Complaint, Defendant has been a company whose employees, including the Plaintiff, are engaged in interstate commerce and whose employees handle and/or work on goods moved in and/or produced in commerce.

124. Defendant's gross annual volume of revenue exceeds $500,000.

125. Defendant was an employer of Plaintiff as defined by 29 U.S.C. § 203(d).

126. During the three years preceding filing this Complaint, Plaintiff, and all others similarly situated auditors were employees of Defendant as defined by 29 U.S.C. § 203(e)(1).

127. Plaintiff and all similarly situated auditors employed by Defendant were engaged in interstate commerce and/or the production of goods for interstate commerce while working for Defendant. Plaintiff's interstate commercial activity

included, but was not limited to, using telephones and email systems to communicate with people across state lines

128. During the three years preceding filing this Complaint, Defendant recorded Plaintiff's hours worked over forty hours for a work week on at least one or more occasion.

129. Defendant failed to pay Plaintiff for all hours worked over forty in a work week.

130. As the result of Defendant's willful and intentional violation of the FLSA, Plaintiff has been damaged, suffering loss of overtime pay.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the Americans with Disabilities Act;

B. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of the Family and Medical Leave Act;

C. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of the Fair Labor Standards Act;

D. Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position she would have had, had she not been terminated;

E. Award her back pay, with employment benefits, front pay, liquidated damages; compensatory damages, special damages; punitive damages, and nominal damages and all other types of damages available at law or equity.

F. Attorneys' fees and costs;

G. Plaintiff requests that the Court award Plaintiff equitable relief as provided by law; and,

H. Any different or added relief as determined by the Court to which Plaintiff is entitled.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**

_/s/ Kira Fonteneau_
Kira Fonteneau (FON007)

**OF COUNSEL:**

The Fonteneau Firm LLC
A Member of the Five Points Law Group LLC
2151 Highland Avenue, Suite 205
Birmingham, Alabama 35205
T: 205.564.9005 F: 205.564.9006

### PLEASE SERVE DEFENDANT AS FOLLOWS

**Vantage Management LLC**
**1544 Main Street**
**Fyffe, AL 35971**
**Lowell Ray Barron, II**
**1544 Main Street**
**Fyffe, AL 35971**